## Case No. 16,844.

In re VANDERVELPEN et ux.

[14 Blatchf. 137.] [1]

Circuit Court, S. D. New York. Feb. 20, 1877.

EXTRADITION—TREATY WITH BELGIUM—JURISDICTION OF COMMISSIONER.

1. The extradition treaty between the United States and Belgium (18 Stat. 804) declares that its provisions shall not apply to any crime committed prior to the date of the treaty, except murder and arson. The date of the signing of the treaty was March 19th, 1874. It was not to take effect until 20 days after the day of the date of the exchange of ratifications. They were exchanged April 30th. 1874. *Held*, that a crime committed in Belgium on the 1st of May, 1874, was covered by the treaty.

2. Where an extradition case, under a treaty, is brought before a United States commission-

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

er, it is his judicial duty to judge of the effect of the evidence, and no other judicial officer has any power to review his action thereon.

[Cited in Re Wiegand, Case No. 17,618: Re Wahl, Id. 17,041; Re Fowler, 4 Fed. 317.]

[This was an application by Jean B. H. Vandervelpen and Jeanette Damas, his wife, for a writ of habeas corpus.]

William D. Shipman and Emmet R. Olcott, for relators.

Frederic R. Coudert, for the Belgian government.

JOHNSON, Circuit Judge. These persons being in the custody of the marshal of the Southern district of New York, in extradition proceedings had before Kenneth G. White, a commissioner of the circuit court, specially authorized to entertain such proceedings, upon the warrant and decision of such commissioner against them, have been now brought before me by writ of habeas corpus. The question I am to consider is, whether the restraint and imprisonment of the petitioners is lawful, for it is only from unlawful restraint and imprisonment that parties can be freed by means of the writ of habeas corpus.

The extradition of persons charged with crimes alleged to have been committed. is regulated by the Revised Statutes, (title 66), in conjunction with the particular treaty or convention applicable to the case. Section 5270 covers the whole authority and procedure of the magistrates of this country in these proceedings. It provides as follows: "Whenever there is a treaty or convention for extradition between the government of the United States and any foreign government, any justice of the supreme court, circuit judge, district judge, commissioner, authorized so to do by any of the courts of the United States, or judge of a court of record, of general jurisdiction, of any state, may, upon complaint made under oath, charging any person found within the limits of any state, district or territory, with having committed within the jurisdiction of any such foreign government, any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice. judge or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention. he shall certify the same, together with a copy of all the testimony taken before him, to the secretary of state, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention, and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made." The

authority of this law cannot be and is not denied, and it necessarily follows that an imprisonment in pursuance of it is lawful. The treaty for extradition under which these parties have been charged, is between the United States and Belgium. The officer who has acted under the law is one of those upon whom it confers the power of acting. For the purposes of this law, each of the enumerated officers possesses the same authority, so that it is indifferent, for all legal purposes, whether he is the chief justice of the supreme court of the United States, or only a commissioner authorized to act by any of the courts of the United States. Each of them derives his power not from his official station, but from the delegation of power conferred by this act. A complaint under oath was made before this officer, charging these parties, who were found within the limits of a state, with having committed within the jurisdiction of Belgium a criminal offence provided for by that treaty. The offence thus charged was uttering a forged obligation, with intent to defraud, on and after the 1st day of May, 1874. It is provided for by subdivision 5 of article 2 of the treaty. 18 Stat. 804. Article 3 declares, that the provisions of the treaty shall not apply to any crime or offence committed prior to the date of the treaty, except murder and arson. The date of the signing of the treaty is March 19th, 1874. By article 8 it was not to take effect until twenty days after the day of the date of the exchange of ratifications. These were exchanged April 30th, 1874, and the treaty did not take effect until twenty days thereafter. But, when it did take effect, it operated according to its terms. The reference in article 3 was to the date of the treaty, which was either the date of the signing, or the date of the exchange of ratifications, and not the time of its taking effect. The offence charged, therefore, is included, in respect to time as well as to substance, within the provisions of the treaty. The warrant issued by the magistrate, on which the prisoners were arrested, follows the complaint, and directs the apprehension of the persons charged, and that they be brought before the commissioner who issued the warrant, to the end that the evidence of criminality may be heard and considered. The statute and the treaty have thus far been exactly followed by the commissioner, who thereupon became clothed with all the authority that the treaty and the statute confer in this behalf. When it is remembered that the treaty and the statute create the power, and that judicial intervention takes place only because they prescribe it, and that no review, by judicial authority, of the action of the officer who executes the power, is provided by either treaty or statute, no ground is apparent upon which such a review can be claimed. The jurisdiction of the commissioner is complete when the prisoners are brought before him under the statute and treaty, upon a charge provided for by the treaty. He is then to hear and consider the evidence of criminality, in the exercise of his jurisdiction. If, on the hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty, he must certify the same, together with a copy of all the testimony taken before him, to the secretary of state. In this case, a mass of evidence was adduced before the commissioner, authenticated according to the provisions of the act of June 19th, 1876 (19 Stat. 59), and relating to the charges against the prisoners. Of the effect of this evidence, it was the judicial duty of the commissioner to judge, and neither the duty nor the power to review his action thereon has been conferred upon any other judicial officer. If he deems it sufficient, the statute prescribes his further action in the premises. It then rests with the executive authority to determine, in the last resort, what is demanded by justice and the obligations of the treaty. If it appears to the president, upon a review of all the evidence, that the charge is not sustained, and that justice and the obligation of the treaty do not require the surrender of the prisoners, he can refuse it, and they can be set at liberty, either under the provisions of section 5273 of the Revised Statutes, or in any other appropriate manner.

The whole subject involved in this case has received very careful and ample examination, in this circuit, in the case of In re Stupp [Case No. 13,563], where all the previous cases are fully examined by Judge Blatchford. His opinion in that case was concurred in by Judge Woodruff, and their decision established the law in this circuit. I consider it my duty, and my judgment agrees with their views, to apply that decision to this case. I abstain from expressing any opinion upon the effect of the evidence. Having, as I think, no right to make that opinion effectual in case it differed from that of the commissioner, I think it only suitable to withhold it all together. The writs must be discharged, and the prisoners remanded to the custody from which they were taken.